UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALFRED ORTIZ and MARITZA ORTIZ,

                    Plaintiffs,

    -against-

WESTCHESTER MEDICAL CENTER HEALTH
CARE CORPORATION and ORANGE REGIONAL
MEDICAL CENTER,

                   Defendants.

No. 15 Civ. 5432 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiffs Alfred and Maritza Ortiz brought this action against Defendants Westchester Medical Center Health Care Corp. ("Westchester") and Orange Regional Medical Center ("Orange") alleging violations of the Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* With discovery underway, Plaintiffs seek to amend their complaint to correct certain factual and typographical mistakes, and to supplement their allegations supporting injunctive relief under the ADA. (ECF Nos. 48 & 50, Ex. A ("PAC").) Westchester opposes Plaintiffs' leave to amend the injunctive claim, primarily arguing the amendments are futile but also asserting they are made in bad faith, because the amendments do not—and cannot in light of Plaintiffs' deposition testimony—demonstrate that Plaintiffs have standing. (ECF No. 51.) For the following reasons, Plaintiffs' motion to amend is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/2016

## BACKGROUND

Defendant Orange does not oppose Plaintiffs' motion, and Defendant Westchester only opposes the amendments offered in support of Plaintiffs' claim against it for injunctive relief under the ADA.  The facts and background relevant to Plaintiffs' claims for injunctive relief as alleged against Westchester are set forth below.

## I.   Alleged Violations of the ADA by Westchester[1]

Plaintiff Alfred Ortiz and his wife Plaintiff Maritza Ortiz are deaf individuals who communicate primarily by American Sign Language ("ASL") and have a limited understanding of the English language.  (PAC ¶¶ 1, 16.)  Mr. Ortiz was taken by ambulance to Westchester and hospitalized on January 25, 2015, after suffering a heart attack.  (Id. ¶¶ 17, 37-38.)  He underwent heart surgery on January 30, 2015, and was discharged on February 12, 2015.  (Id. ¶¶ 18-19.)  He was readmitted the next day, February 13, 2015, with a diagnosis of a deep vein thrombosis in his right leg.  (Id. ¶ 20.)  He remained at Westchester until he was again discharged on February 22, 2015.  (Id.)  His wife accompanied him to Westchester and was often present during his hospitalization.  (Id. ¶¶ 1, 21.)

Plaintiffs requested an ASL interpreter during Mr. Ortiz's treatment at Westchester, but their requests were flatly denied.  (Id. ¶¶ 1, 22.)  Instead, the staff at Westchester attempted to communicate with Plaintiffs by written notes or through an ineffective videoconferencing, or remote, interpretation system called "VRI."  (Id. ¶ 23.)  Choosing to use these ineffective forms of communication ostensibly reflects Westchester's failure to train employees and to promulgate non-discriminatory policies.  (Id. ¶ 36.)

---

[1] The following facts are taken from Plaintiffs' proposed amended complaint.  *See Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014) (Freeman, J.) (accepting facts alleged in proposed amended complaint as true for the purposes of deciding a motion to amend).

As a result of not receiving an onsite ASL interpreter, Plaintiffs did not fully understand Mr. Ortiz's condition, the care he received, or his discharge instructions (*id.* ¶ 24); were subject to greater levels of fear, anxiety, indignity, humiliation, and emotional distress (*id.* ¶ 33); and received substandard and discriminatory treatment (*id.* ¶¶ 34-35).

## II.    Allegations Specific to Plaintiffs' Claim for Injunctive Relief

Plaintiffs allege that "there is a clear risk that Defendants' actions will recur with Plaintiffs and/or additional deaf patients or companions." (*Id.* ¶ 52.)  They ask the Court to "[e]njoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs[.]" (*Id.* at 13 (Prayer for Relief, Part b).)  To support their claim for injunctive relief, they allege that:

> It is reasonably foreseeable that Plaintiffs will continue to visit Defendants' hospitals in the future, either by choice or necessity, as Plaintiffs live in close proximity to [Orange], as Alfred Ortiz suffers from a chronic heart condition and will likely need further medical care on a routine or emergency basis, and as Alfred Ortiz was taken to [Westchester] by ambulance when he suffered a heart attack in January of 2015 (*id.* ¶ 37);

> Due to the proximity in which Plaintiffs live to Defendants' hospitals, and based on the fact that Alfred Ortiz was taken by ambulance to [Westchester] when he suffered a heart attack in January of 2015, it is reasonably foreseeable that those hospitals are where either Plaintiff would be taken via ambulance in an emergency healthcare situation (*id.* ¶ 38);

> It is also reasonably foreseeable that Mr. and [Mrs.] Ortiz would accompany each other to either of Defendants' hospitals in the future, as they have done so in the past (*id.* ¶ 39 (Compl. ¶ 37)); and

> Plaintiffs are aware of discriminatory barriers to access at Defendants' hospitals and are thereby deterred from accessing their healthcare services because of discrimination they have faced and expect to face in the future (*id.* ¶ 41 (Compl. ¶ 39)).

3

The additional facts contained in these allegations as compared to the original complaint are Mr. Ortiz's "chronic heart condition" and that he "was taken to [Westchester] by ambulance when he suffered a heart attack in January of 2015."  (*Compare* Compl. ¶¶ 35-36, *with* PAC ¶¶ 37-38.)

## III.   Procedural History

On July 13, 2015, Plaintiffs commenced this action against Defendant Westchester by filing a complaint, which Westchester answered on August 10, 2015.  (ECF Nos. 1 & 9.)[2]  On October 22, 2015, a Rule 16 scheduling order was entered allowing amended pleadings until February 1, 2016.  (ECF No. 25.)  That order was amended on March 7, 2016, extending the timeframe for amending pleadings to June 10, 2016.  (ECF No. 34.)

### a.   Westchester Asserted Plaintiffs Lack Standing

By letter dated May 19, 2016, Westchester requested a pre-motion conference for its anticipated motion to dismiss Plaintiffs' claims for injunctive relief on the basis of standing. (ECF No. 38.)  Plaintiffs responded that it was too early to resolve the issues on the pleadings where they had sufficiently alleged standing.  (ECF No. 39.)  The Court scheduled a conference for June 16, 2016 to address the issues.  (*See* ECF No. 38.)  At the conference, Plaintiffs indicated that, if Defendants would not consent, they intended to file the motion now pending before the Court to amend their complaint with additional facts demonstrating their standing to seek injunctive relief.  (Minute Entry for June 16, 2016 Conference.)

### b.   Westchester Deposed Plaintiffs, and Plaintiffs Served the Proposed Amendments

Mr. and Mrs. Ortiz sat for depositions on June 28, 2016, and June 30, 2016, respectively. (Def. Decl. in Partial Opp'n to Mot. for Leave to Am. Compl., Exs. E ("A. Ortiz Tr.") and F ("M. Ortiz Tr."), ECF No. 52.)  In response to questioning by counsel for Westchester, Mr. Ortiz

---

[2] In Westchester's Answer, it raised standing as a general defense.  (Def. Answer at 7.)

indicated he did not know why he was taken to Westchester after arriving at Orange to seek treatment for his heart attack.  (A. Ortiz Tr. at 21.)  When asked if he had any current doctors at Westchester, Mr. Ortiz responded he was "not a sucker"—"it's an hour, hour and a half to come to Westchester.  . . . I'm not going to come [to Westchester] for medical care.  Additionally, tolls are very expensive.  I'm not going to pay tolls unnecessarily."  (*Id.* at 23 ("It's too far for me to come [to Westchester]").)  Mrs. Ortiz also indicated that none of her physicians are located at Westchester, but rather are in Middletown, New York, which is significantly closer to Plaintiffs' home.  (M. Ortiz Tr. at 52, 59.)  Her first and only time accompanying her husband to Westchester was when he was transferred there from Orange via ambulance.  (*Id.* at 40, 59, 97.)

Also on June 30, 2016, Plaintiffs' served a copy of their proposed amended complaint on Defendants.  (Decl. Andrew Rozynski, Esq., in Supp. Pls. Mot. to Am. Compl., Ex. C.)

\*     \*     \*

On July 7, 2016, Westchester informed Plaintiffs and the Court that they did not consent to the proposed amended complaint.[3]  Plaintiffs' motion to amend was fully submitted as of September 2, 2016.  (ECF No. 48.)

### LEGAL STANDARD ON A MOTION TO AMEND THE PLEADINGS

Federal Rule of Civil Procedure 15 governs amendments to pleadings, providing for one amendment as a matter of course within 21 days of serving the pleading or, if the pleading requires a response, within whichever period of time is shorter: 21 days after the service of a responsive pleading or 21 days after the service of a motion made under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1).  Further amendments are conditioned on either "the opposing party's written consent or the court's leave"—the latter of which should be "freely give[n] . . .when

---

[3] Orange indicated they had no objections to Plaintiffs filing their proposed amended complaint.

justice so requires." Fed. R. Civ. P. 15(a)(2).  Nonetheless, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'")).

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  A district court may "deny leave to amend where the motion has been made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).  "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."  *Block*, 988 F.2d at 350 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

"Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers*, 654 F.2d at 856); *accord Block*, 988 F.2d at 350.  But, if during the proceedings the Court enters a Rule 16 scheduling order that further restricts amendments, then "the lenient standard under Rule 15(a) . . . must be balanced against the [stricter] requirement under Rule 16(b)[.]"  *Holmes v. Grubman*, 568 F.3d 329, 334-

35 (2d Cir. 2009) (internal citations omitted).  Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent," where "'good cause' depends on the diligence of the moving party."  Fed. R. Civ. P. 16(b)(4); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Irrespective of whether undue delay, prejudice, or bad faith can be established, leave to amend may independently be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."  *AEP Energy*, 626 F.3d at 726 (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001)); *accord Ruotolo*, 514 F.3d at 191 (quoting *Foman*, 371 U.S. at 182).  In other words, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)," or if the proposed amendments would be insufficient to support Article III standing—a threshold inquiry for courts.  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Treiber v. Aspen Dental Mgmt., Inc.*, 94 F. Supp. 3d 352, 367 (N.D.N.Y. 2015), *aff'd*, 635 F. App'x 1 (2d Cir. 2016) (summ. order); *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).  Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face" or to demonstrate standing to bring the claim. *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (denying motion to add claims as futile); *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summ. order) ("granting leave to amend would be futile as the barriers to relief for [the alleged] claims cannot be surmounted by reframing the complaint" where *inter alia* plaintiff lacked standing to seek injunctive relief).

7

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  It is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997).  The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotation marks omitted).

## DISCUSSION

Defendant Westchester has asserted that Plaintiffs' do not have standing to seek injunctive relief.  Plaintiffs have responded with a proposed amended complaint and a motion to amend the pleadings.  Defendant argues that leave to amend should not be granted primarily because the amendments would be futile since the proposed amended complaint does not cure Plaintiffs' lack of standing to bring claims under Title III of the ADA for injunctive relief.  (Def. Westchester's Mem. in Partial Opp'n ("Def. Opp'n") at 1, ECF No. 51.)  Because the timeframe within which Plaintiffs could have served their first amended complaint as a matter of course has elapsed, leave of the Court is required.  *See* Fed. R. Civ. P. 15(a)(1) & (2).

The Court will first analyze whether granting leave to amend would indeed be futile, *i.e.*, whether the proposed amendments would survive a motion to dismiss on standing grounds, before considering whether they would unduly prejudice Defendant or are motivated by bad faith, made after undue delay, or lack good cause.

## I.     Futility of Amendments

To determine if Defendant is correct that leave to amend would be futile, the Court analyzes Plaintiffs' standing in light of the proposed amendments.  *See, e.g.*, *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014) (accepting facts alleged in proposed amended complaint as true for the purposes of deciding a motion to amend); *cf. Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 17 (2d Cir. 2015) (summ. order) (citing *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998)) (proper to assess "standing to request an injunction based on the amended complaint, which 'supercede[d] the original, and render[ed] it of no legal effect'").

### a.     Standing Requirements for Injunctive Relief under Title III of the ADA

"[T]he 'irreducible constitutional minimum' of standing consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992), and citing *Friends of the Earth, Inc. v. Laidlaw Envntl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'"  *Id.* at 1545 (quoting *Friends of the Earth*, 528 U.S. at 180-81).  When seeking injunctive relief, a plaintiff's standing "depend[s] on whether [that plaintiff] [is] likely to suffer future injury" based on the alleged conduct.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  This "likelihood of future harm" must be "real and immediate," though it need not be certain.  *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004).  Plaintiffs bear the burden of alleging facts in their complaint sufficient to establish standing.  *Amnesty Int'l USA v. Clapper*, 667 F.3d 163, 176-77 (2d Cir. 2011) (citing *Lujan*, 504

U.S. at 569 n.4); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011);

*Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) ("plaintiff must

'clearly . . . allege facts demonstrating' each element").

Although the ADA "generously confer[s] the right to be free from disability-based

discrimination," *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) (per

curiam) (quoting *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009)), "Congress [cannot] abrogate

the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to

himself,' that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v.

Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (citations omitted). Accordingly, the Second Circuit

has found these requirements met for plaintiffs seeking injunctive relief where:

> (1) the plaintiff alleged past injury under the ADA; (2) it was
> reasonable to infer that the discriminatory treatment would continue;
> *and* (3) it was reasonable to infer, based on the past frequency of
> plaintiff's visits and the proximity of defendants' [facilities] to
> plaintiff's home, that *plaintiff intended to return* to the [] location.

*Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summ. order) (quoting

*Kreisler*, 731 F.3d at 187-88) (emphasis added); *see also Harty v. Greenwich Hosp. Grp., LLC*,

536 F. App'x 154, 155 (2d Cir. 2013) (summ. order); *Camarillo v. Carrols Corp.*, 518 F.3d 153,

158 (2d Cir. 2008) (per curiam).

"Intent to return is a highly fact-sensitive inquiry that incorporates a range of factors"

such as "the frequency of the plaintiff's past visits" and "the proximity of the defendant's

services, programs, or activities to the plaintiff's home" along with any other factor "relevant to

the calculation" including the plaintiff's "occupation or demonstrated travel habits." *Bernstein*,

621 F. App'x at 58-59 (plaintiff's intent to return to Central Park could not be inferred solely on

the basis of his past visits to New York City); *Nastu v. Stamford Health Integrated Practices*,

No. 16 Civ. 0292 (JCH), 2016 WL 2858774, at *4 (D. Conn. May 16, 2016) (plaintiff did "not

explain[] why he would need or want to engage with [the] physicians going forward, when many other physicians in greater Stamford [were] available to meet his needs," thus there was no evidence "making it plausible to infer an intent to return"); *but see Camarillo*, 518 F.3d at 158 (plaintiff's past visits and proximity to the restaurant made it reasonable to infer an intent to return); *accord Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 644 (D. Md. 2005) (plaintiffs' close proximity to the hospital and alleged multiple past visits "support[ed] their assertions that they likely w[ould] seek treatment there in the future").

Moreover, where the violation alleged deters a plaintiff from accessing the services sought, the intent to return need only be an intent to frequent the establishment *if* the violation is remedied. *Kreisler*, 731 F.3d at 187-88 (citing 42 U.S.C. § 12188(a)(1)) ("disabled individuals need not 'engage in a futile gesture if such a person has actual notice that [the private entity] does not intend to comply with [ADA] provisions'"); *see Harty*, 536 F. App'x at 155 n.1 (the "complaint and affidavit must still give rise to 'a reasonable inference that [the plaintiff] would frequent [the Inn] were the violation remedied'"); *see also Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 90 (2d Cir. 2014) (summ. order) (plaintiff's "prior use of Amtrak, her residence in a city with an Amtrak station, and the distinct and widespread nature of Amtrak's services in providing access to intercity travel" led to the reasonable inference that she "intend[ed] to patronize Amtrak again if the alleged violations [were] remedied").

### b. Analysis of Plaintiffs' Standing to Seek Injunctive Relief

Defendant does not dispute Plaintiffs' standing on the basis of the alleged past injury, and the Court is satisfied that Plaintiffs allege a concrete and particularized injury, personal to them, under the ADA.  (PAC ¶¶ 21-24, 31, 33-35.)  Nor does Defendant contest that Plaintiffs are entitled to the reasonable inference that the alleged violations are continuing, and the Court finds,

based on the facts alleged in the complaint and providing all reasonable inferences from those facts to Plaintiffs, that they would be faced with that same injury if they were treated at Defendant's facility again.  (*Id.* ¶¶ 32-33, 36.)  Instead, Defendant asserts that Plaintiffs do not allege a present intent to return to the hospital or an intent to return if the hospital became compliant.  (Def. Opp'n at 5-8.)  Accepting Plaintiffs' allegations in the proposed amended complaint as true but also considering the deposition testimony provided by Defendant,[4] the Court agrees that Plaintiffs do not plausibly allege a real and immediate threat of future harm as required to determine that Plaintiffs have standing to seek injunctive relief.  *See Lyons*, 461 U.S. at 105; *Shain*, 356 F.3d at 215-16.  In fact, the deposition testimony submitted by Defendant demonstrates an intention to the contrary—meaning that Plaintiffs' only basis for standing rests on a loosely alleged possibility that they will be forced to return involuntarily because of Mr. Ortiz's chronic health condition and single past ambulance transport from nearby Orange to distant Westchester.  (Def. Opp'n at 6; PAC ¶¶ 37-38; A. Ortiz Tr. at 23.)

The Second Circuit compared the two scenarios—voluntary versus involuntary return—in *Harty v. Greenwich Hospital Group*, concluding that a plaintiff who "avow[ed] a present intention to return" to a particular location, "an act that depend[ed] only upon his own volition," had standing, while a plaintiff who "could" or might have been referred to a particular hospital in the future, the likelihood of which was "contingent upon events whose occurrence was speculative and beyond her control," alleged an indefinite future harm "insufficient to maintain standing to seek injunctive relief."  428 F. App'x at 72 (citing *Freydel v. New York Hospital*, 242

---

[4] The Court accepts the proposed amended complaint's material allegations as true and construes the complaint in Plaintiffs' favor when considering a challenge to standing based on the pleadings, *see Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 (2d Cir. 2016), but also considers evidence outside the pleadings when making a standing determination.  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *see also Polanco*, 23 F. Supp. 3d at 366 n.1.

F.3d 365 (unpublished table decision), 2000 WL 1836755, at *5-6 (2d Cir. 2000)).  The latter plaintiff's situation, the involuntary scenario in *Freydel v. New York Hospital*, closely resembles Mr. and Mrs. Ortiz's alleged predicament.  Freydel alleged a chronic heart condition and the potential for another referral to the defendant hospital, which was a tertiary care facility associated with her local hospital.  *Freydel*, 2000 WL 1836755, at *5.  But since there were other hospitals and tertiary care facilities closer to Freydel's home, the chance of another referral to the defendant's facility was "indefinite speculation" insufficient to establish standing.  *Id.* at *6.

Here, Plaintiffs allege that "there is a clear risk that Defendants' actions will recur with Plaintiffs," (PAC ¶ 52), because it is "reasonably foreseeable" in light of Mr. Ortiz's "chronic heart condition" that he "will likely need further medical care on a routine or emergency basis" and will be transported along with his wife[5] to Westchester by ambulance, since that is where he was taken when he suffered his January 2015 heart attack.  (*Id.* ¶¶ 37-39.)  But as in *Freydel*, "[o]ne visit to a hospital does not establish that [Plaintiffs are] likely to again find [themselves] seeking treatment at [Westchester]."  *Freydel*, 2000 WL 1836755, at *6.[6]  Plaintiffs also allege "they are deterred from accessing [Defendant's] healthcare services because of discrimination they have faced and expect to face in the future."  (*Id.* ¶ 41.)  While it may be true that Plaintiffs would be less concerned about the potential of an emergency visit if, in their view, Westchester

---

[5] Defendant argues that Mrs. Ortiz, who "has not personally treated" at Westchester, lacks standing altogether.  (Def. Opp'n at 10.)  But so long as there was an intent for Mr. Ortiz to return, or an imminent likelihood of such a return, to Westchester for treatment, there would be a sufficient likelihood that his companion, Mrs. Ortiz, would suffer the same harm, personal to her, complained of in this action.  *Cf. Loeffler v. Staten Island University Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) ("non-disabled parties bringing associational discrimination claims need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated").

[6] Proximity considerations, which cut against Plaintiffs in this case, are largely irrelevant in light of Mr. Ortiz's aversion to voluntarily seek treatment at Defendant's health care facility due to the hours of driving required to reach Westchester from his home, (A. Ortiz Tr. at 23), without allegations linking the proximity to the likelihood that Mr. Ortiz will again be transported from Orange to Westchester.

provided adequate ASL interpreters, that does not change Mr. Ortiz's averred desire to avoid travelling to Westchester.  (*See* A. Ortiz Tr. at 23 ("It's too far for me to [go there]. . . . [I]t's an hour, hour and a half to come to Westchester. . . . I'm not going to [go there] for medical care [or] pay tolls unnecessarily.")); *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 168 (S.D.N.Y. 2006) ("the failure to allege an intention or desire to return to the place where a plaintiff encountered an ADA violation . . . merits dismissal").

In order to establish a real and immediate threat of future harm as required for standing purposes in this case, which depends on the potential of an *involuntary* transfer, Plaintiffs would need to allege that a referral or emergency transport to Defendant Westchester was actually likely, not merely possible—which is all they have alleged by pointing to a single occurrence. *See, e.g.*, *Rapa v. City of New York*, No. 15 Civ. 1916 (JMF), 2015 WL 5671987, at *2 (S.D.N.Y. Sept. 25, 2015) (plaintiff's "bare allegation that he 'expects' to interact with the NYPD and Lincoln Medical Center during a visit to the City in the future . . ., is not enough to establish the requisite likelihood of future injury"); *Constance v. State Univ. of N.Y. Health Sci. Ctr. at Syracuse*, 166 F. Supp. 2d 663, 667 (N.D.N.Y. 2001) ("speculative to assume that [plaintiff] will again suffer a medical emergency while [visiting] Syracuse and would again be transported to [a non-compliant facility] for treatment"—plaintiffs demonstrated "at most [] a mere possibility of a return visit to [the facility], not a 'likelihood'"); *Bravin v. Mount Sinai Med. Ctr.*, 186 F.R.D. 293, 299 (S.D.N.Y.) (plaintiffs needed to "show that there [was] a likelihood that they w[ould] require the services of Mt. Sinai in the near future"), *vacated in part on reargument*, 58 F. Supp. 2d 269 (S.D.N.Y. 1999) (vacating grant of summary judgment on issue of intentional discrimination without disturbing dismissal of claims for injunctive relief); *see also Williams v. City of New York*, 34 F. Supp. 3d 292, 297 (S.D.N.Y. 2014) ("[a]lthough there is certainly some

14

chance that the Plaintiff might find herself arrested again by police officers who do not offer her

a sign language interpreter, that is the same speculative chance that the Supreme Court in *Lyons*

and the Second Circuit in *Shain* found insufficient to confer standing").

Notably, after dismissing similar injunctive claims in *Naiman v. New York University*, the

court provided that plaintiff with the opportunity to "satisfy his pleading burden" through an

amended complaint detailing "whether [he] suffer[ed] from a recurring medical condition and the

reasons *why* [the hospital at issue], as opposed to some other hospital, [was] the facility which

[he] would go to in an emergency." *Naiman*, No. 95 Civ. 6469 (LMM), 1997 WL 249970, at *5

(S.D.N.Y. May 13, 1997) (emphasis added). But Plaintiffs have already been given the

opportunity to proffer amendments to cure their standing deficiencies. The "why"—the

connection between a single past ambulance trip and imminent future trips—is still missing from

Plaintiffs' proposed pleadings and is the obstacle to establishing standing.

Plaintiffs attempt to provide this connection in their reply brief. (*See* Pls. Reply Mem. at

3-4 ("[Westchester] was the closest tertiary care facility that could provide the care that Mr. Ortiz

required and, due to his chronic heart condition and medical history, will likely require in the

future."), 4-5 ("To be very clear, while Defendant's hospital may not be the closest in proximity

to the Plaintiffs' home, *it is the closest in proximity that can provide the necessary medical care*

*that Mr. Ortiz's heart condition requires*.") (emphasis added), 6 ("Orange[]—the hospital closest

to the Ortiz home—was not capable of providing the care that Mr. Ortiz required, thus he was

transported to the closest hospital that could: [Westchester]. Given Mr. Ortiz's medical

condition, it is extremely likely that he would again be transported, in an emergency situation, to

[Westchester] involuntarily given its proximity and the specialized treatment Mr. Ortiz needs."),

ECF No. 53.) But the facts asserted by counsel for the first time on reply are entirely absent

from the proposed pleadings, and are not the equivalent of a supplementary affidavit submitted by Plaintiffs. *See Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (standing "cannot be 'inferred argumentatively from averments in the pleadings,' . . . but rather 'must affirmatively appear in the record'") (citation omitted); *Ross v. City University of New York*, No. 15 Civ. 4252 (KAM) (VMS), --- F. Supp. 3d ----, 2016 WL 5678560, at *4 n.2 (S.D.N.Y. Sept. 29, 2016) (accepting plaintiff's affidavit supplementing allegations of continuing harm submitted in opposition to a motion to dismiss). "It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005) (summ. order).

Courts outside this Circuit have also found standing lacking under circumstances similar to those alleged here. *See, e.g.*, *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1145-46 (11th Cir. 2014) (no standing to seek injunctive relief where plaintiff failed to present evidence to support contention that allegedly chronic medical condition—ulcerative colitis—actually created a real and immediate threat that he would return to the defendants' facilities); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (no standing to seek injunctive relief against the "only regional hospital" in plaintiff's area, where he had "never been a patient of [the hospital,] ha[d] no imminent plans to return" and there was "no evidence in the record regarding the number of accessible hospitals near [him], nor their distance from his home"); *see also Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019-20 (7th Cir. 2016) (where snow ramps were allegedly inaccessible due to city's snow removal practices, there needed to be a "substantial," though not "certain," risk of possible future injury to find standing—and the court could only "speculate whether [attorney plaintiffs'] cases w[ould] involve court appearances on future snowy days").

Because they have failed to demonstrate the likelihood, rather than mere possibility, of a future harm, Plaintiffs' claim for injunctive relief would not survive a motion to dismiss. *Forziano*, 613 F. App'x at 17 (citing *Lyons*, 461 U.S. at 108-109) (affirming dismissal of injunctive claims because plaintiffs' assertion that "they may be forced to move out of [an ADA-compliant facility] at some point [was] speculative harm" that "they may or may not suffer in the future" and thus was "insufficient to confer standing"); *Freydel*, 2000 WL 1836755, at *6 (affirming dismissal of requests for injunctive relief under the ADA where plaintiff failed to provide evidence of a likely future encounter between herself and defendant hospital).  Pointing to a single past instance does not, without engaging in impermissible "indefinite speculation," plausibly bridge the gap between a mere possibility and a real and imminent threat of harm as required to support the inference that it is "reasonably foreseeable" instead of simply conceivable that Mr. or Mrs. Ortiz will be transported by ambulance to Westchester again.  *See Freydel*, 2000 WL 1836755, at *6; *Iqbal*, 556 U.S. at 680; *see also Power E. Ltd. v. Transamerica Delaval Inc.*, 558 F. Supp. 47, 50 (S.D.N.Y.) ("legal conclusions in a complaint are not magical incantations" that stave off an "appropriate motion to dismiss"), *aff'd*, 742 F.2d 1439 (2d Cir. 1983).

Therefore, the Court denies Plaintiffs' request for leave to amend their injunctive claims (PAC ¶¶ 37-38) on futility grounds.  *See, e.g.*, *Williams*, 34 F. Supp. 3d at 297-98 (proposed amendments designed "to cure [] jurisdictional defects by showing a likelihood of peaceful encounters with the NYPD, not just the likelihood of being arrested . . . would be futile because [p]laintiff c[ould] only speculate about future encounters").  Nevertheless, Defendant Westchester consents to the aspects of the proposed amended complaint "that correct the dates of treatment at [D]efendants' facilities and Plaintiffs' home address."  (*See* Def. Opp'n at 1.)  Leave to amend is, therefore, granted for those corrections.

**II.      Defendant's Remaining Arguments Against the Proposed Amendments**

Given that leave to amend the complaint would be futile based on the proposed amendments, this Court need not decide whether there was undue delay in seeking leave, whether the proposed amendments are made in bad faith or would unduly prejudice Defendant, or whether Plaintiffs have shown "good cause" under Rule 16(b) to amend the scheduling order. The Court notes, however, that it is soundly "within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *See Warth*, 422 U.S. at 501. If Plaintiffs' proposed amendments served that purpose, then it would weigh heavily in favor of granting leave to amend.

Additionally, Plaintiffs' amended allegations regarding future treatment at Westchester, viewed in the light most favorable to Plaintiffs, only raise the potential for involuntary transfer to Westchester, which is clearly supported by Plaintiffs' respective deposition testimony evidencing that neither has plans to return to Westchester voluntarily. Thus, there is no indication from the proposed amended complaint or deposition testimony that the amendments are made in bad faith. Moreover, the issue of standing was raised before June 10, 2016—the amendment cut-off under the scheduling order—through Defendant's pre-motion letter, and Plaintiffs requested leave to amend *six days* after the cut-off at the pre-motion conference held on June 16, 2016, making it likely that Plaintiffs' diligence would provide "good cause." *See Parker*, 204 F.3d at 326.

*        *        *

Because Plaintiffs' allegations fall short of establishing standing to seek injunctive relief under the ADA, leave to amend those claims as alleged against Defendant Westchester must be denied as futile and those claims dismissed without prejudice for lack of subject matter

jurisdiction.  *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219-20 (10th Cir. 2006) (failure to show complaint could be amended to establish standing justified denial of leave to amend and dismissal of action but only without prejudice).  Similarly, because the same legal standards govern the disability provisions of the ADA, RA, and NYSHRL, Plaintiffs' claims for injunctive relief under those statutes must be dismissed as well.  *See Camarillo*, 518 F.3d at 158; *Bravin*, 186 F.R.D. at 301 ("[t]o the extent that Plaintiffs' RA [and] New York State Human Rights Law . . . claims seek injunctive relief, they [were] also dismissed" due to the lack of standing under the ADA); Fed. R. Civ. P. 12(h)(3) (courts "must" dismiss claims once it is determined that subject-matter jurisdiction is lacking); *Evac, LLC v. Pataki*, 89 F. Supp. 2d 250, 261 n.4 (N.D.N.Y. 2000) (courts are required to raise issues of standing *sua sponte*).

Although Plaintiffs' claims for injunctive relief have been dismissed against Defendant Westchester, the factual information Plaintiffs sought to add to the complaint regarding Mr. Ortiz's chronic condition and the ambulance transport from Orange to Westchester may be added to their statement of facts surrounding the incident.  (*See* PAC ¶¶ 16-19.)[7]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion seeking leave to amend the operative complaint in this action is GRANTED in part and DENIED in part, and Plaintiffs' claims for injunctive relief under the ADA, RA, and NYSHRL must be DISMISSED without prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 48.  Plaintiffs shall file an amended complaint conforming to this Opinion on or before December 9, 2016.

---

[7] The facts surrounding Mr. Ortiz's condition and his January 2015 heart attack, on their own, are akin to the amended treatment facts to which Defendant Westchester already consented, and may still be relevant to Plaintiffs' claims against Defendant Orange.  The apparent proximity of Orange's facilities to Plaintiffs' home allows the Court to infer an intent to return, and, at this time, the Court is satisfied that Plaintiffs' have standing to seek injunctive relief against Defendant Orange.  (*See generally* PAC ¶ 37; A. Ortiz Tr. at 21; M. Ortiz Tr. at 40.)

Defendants are directed to thereafter file an answer, if any, to the Amended Complaint on or before January 9, 2017.  The parties are directed to inform Judge Davison of this Court's ruling.


Dated:   November 18, 2016                                  SO ORDERED:
         White Plains, New York

                                                    _____
                                                    NELSON S. ROMÁN
                                                    United States District Judge